IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 11, 2022

**STATE OF TENNESSEE v. FRANK BARNETT PALMER**

**Appeal from the Criminal Court for Davidson County
Nos. 2019-D-2719, 2020-B-1181  Angelita Blackshear Dalton, Judge**

_____

**No. M2021-00480-CCA-R3-CD**

_____

Defendant, Frank Barnett Palmer, entered a guilty plea as a Range II multiple offender,[1] pursuant to *Hicks v. State*, 945 S.W.2d 706 (Tenn. 1997), to one count of unlawful possession of a firearm by a convicted felon and one count of evading arrest in a motor vehicle, both Class E felonies.  As a part of the plea agreement, the State agreed to a sentence of two to four years on each count, to be determined by the trial court, with a forty-five percent release eligibility.  Following a hearing, the trial court sentenced Defendant to four years with a forty-five percent release eligibility on each count, with six months to serve in count one and the remainder of the sentences suspended to supervised probation, and ran the sentences consecutively.  On appeal, Defendant argues that his sentences are excessive and that the trial court erred in imposing split confinement.  After a thorough review, we affirm the judgments of the trial court.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JOHN W. CAMPBELL, SR., JJ., joined.

Kevin Kelly, Nashville, Tennessee, for the appellant, Frank Barnett Palmer.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Glenn R. Funk, District Attorney General; and Paul Dewitt, Assistant District Attorney General, for the appellee, State of Tennessee.

---

 [1] Defendant's prior criminal history would place him in Range III persistent offender status; however, he was sentenced as a Range II multiple offender with a Range III release eligibility, pursuant to the plea agreement.

## OPINION

## Facts and Procedural History

The facts of this case as detailed in the presentence report[2] are as follows:

On 03/02/2019[,] Defendant was involved in an alleged aggravated assault involving a firearm at [a house on] Wren [Road], Goodlettsville, [Tennessee]. When officers arrived[,] [D]efendant was fleeing in a vehicle that was identified by the victim to contain the perpetrator of the assault. Officers conducted a traffic stop on the vehicle and detained all individuals including [D]efendant[,] who was driving. Once the victim identified [D]efendant as the primary aggressor[,] [officers] began a search of the vehicle. [Officers] located a Taurus TCP .380 in the center console within reach of [D]efendant. On 03/16/2019[,] a more in depth criminal history check was performed an[d] it was discovered [D]efendant had multiple felonies on his record including [one] out of [Georgia] and one in [Tennessee].

. . . .

On 12/23/2019, at approximately 02:16 [a.m.], officers were dispatched to [an address on] Scruggs [Lane] regarding a burglary. When officers arrived, they spoke with victim Letreona Smith. [Ms.] Smith stated she was in bed when her ex-boyfriend, [Defendant,] began banging on her door trying to get into the apartment. [Ms.] Smith stated [that Defendant] began stating he loved her and that he would kill her before he let her leave him. [Ms.] Smith stated that is when [Defendant] kicked in her front door, and she ran onto her patio screaming for neighbors to call for help. [Ms.] Smith's child [D.S.][3] was in the apartment at the time and woke up from the noise. [D.S.] stated he witnessed [Defendant] pacing around the apartment

---

[2] The State introduced the audio recording of the preliminary hearing in this case as an exhibit to the bond revocation hearing. However, no transcript of the guilty plea submission hearing appears in the record on appeal. Based on Supreme Court Rule 26 and Davidson County Local Rule 8, audio recordings of proceedings "cannot constitute or be used as transcripts" on appeal. *Anne S. Wilson v. Scott Bowman*, No. M2009-01382-COA-R10-CV, 2009 WL 2474688, at *3 (Tenn. Ct. App. Aug. 13, 2009); *see also* Tenn. R. App. P. 24(a), (b). Without the guilty plea submission hearing transcript, we will rely on the factual statement as presented in the presentence report, which was admitted without objection at the sentencing hearing.

[3] It is the custom of this court to refer to minors by their initials.

and flipping the glass coffee table over, shattering it. [D.S.] stated he ran out the back door but returned a bit later thinking [Defendant] had left. [D.S.] stated when he returned, he observed [Defendant] still in the apartment grabbing a plate rack and throwing it on the floor. As officers arrived at the complex, they observed a Black male with a moustache in a camouflage hoodie leaving the apartments. [Ms.] Smith was able to point [Defendant] out. Officers returned to where they observed [Defendant] and observed him inside a maroon Ford Fiesta attempting to leave the parking lot. Officers turned on their lights and siren to attempt to stop the vehicle, but [Defendant] fled at a high rate of speed and got onto I-65 South. Officers did not pursue.

*Sentencing Hearing*

Defendant testified that he was living with his fiancée for the prior eighteen months and that they had been together for two years. He said that his children and grandchildren lived in Atlanta and that his family was close. Defendant stated that he was employed at a restaurant and at a pallet factory. He acknowledged that, due to his prior criminal record, he was not allowed to possess a firearm. Defendant explained, "[W]here I'm from, . . . back home, man, I got to protect myself, you know what I'm saying? I don't be out there reckless with no pistol or nothing, you know, so that's why I moved up here to stay, to stay out of trouble, man." Defendant continued, "I'm too old now, man, to be fighting with these young cats, I mean, and too, too impatient to wait for the police, but I can't carry no pistol so I done gave them up." Defendant testified that, since his arrest for unlawful possession of a firearm, he "got rid" of all the weapons in his home.

Defendant recalled that he and Ms. Smith had been in a relationship. He explained that the relationship was volatile and that, if Ms. Smith "didn't get her way," Defendant "would end up in jail." Defendant stated that he never reached out to Ms. Smith but that Ms. Smith made contact with him on multiple occasions via a "private number." Defendant said that, since his arrest for the present charges, he had not "been through no drama" but instead would go to work and come home to spend time with his fiancée and grandson, who was visiting from Atlanta. Defendant stated that he had no mental health issues or substance abuse problems.

On cross-examination, Defendant agreed that, between 2000 and 2005, he had five felony convictions in Georgia and Tennessee: two for burglary, one for aggravated assault, one for reckless aggravated assault, and one for evading arrest in a motor vehicle. He explained that he received "some kind of suspended sentence" in each of those cases and that all but one was "put into effect to serve[.]"

The trial court noted that Defendant appeared at each of his seventeen court appearances and "took it seriously[.]" It acknowledged that Defendant took measures to attempt to demonstrate a change in his conduct. Due to Defendant's criminal history, the trial court applied enhancement factor (1), that Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range. It also applied enhancement factor (8), that Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community, because in prior cases, Defendant failed to comply with the conditions of release and had his suspended sentences put into effect. The trial court declined to apply any mitigating factors. It sentenced Defendant to four years on each count with a release eligibility of forty-five percent. The trial court found that Defendant's sentences were mandatorily required to be served consecutively because Defendant was released on bond for the first offense when he was charged with the second offense. *See* Tenn. R. Crim. P. 32(c)(3)(C).

Regarding manner of service, the trial court found that confinement was necessary to protect society by restraining a defendant who had a long history of criminal conduct. The court found that confinement was necessary to avoid depreciating the seriousness of the offense. It stated:

> [I]t is almost inevitable that that factor is going to be applicable. I mean, every offense in this [c]ourt's opinion that comes before the [c]ourt is a serious offense and I think that the [c]ourt is going to take it serious to make the point that the [c]ourt does not depreciate the seriousness of it[.]

Specific to the present case, the trial court noted that Defendant pled guilty to evading arrest in a motor vehicle and said, "That is very serious and we cannot take that for granted. We cannot abuse our obligations and responsibilities under those circumstances." Considering Defendant's plea to unlawful possession of a firearm by a convicted felon, the trial court stated that Defendant could be charged in federal court for the same offense "and whatever sentence you get down there, if I'm not mistaken, involving a weapon is going to be 100 percent to serve. I don't know what the ranges are, but you know, I say that because you cannot depreciate, you cannot take for granted how serious your conduct is as it relates to that[.]"

The trial court also found that measures less restrictive than confinement had been unsuccessfully applied to Defendant in the past because Defendant had several prior suspended sentences put into effect.

For his conviction for unlawful possession of a firearm by a felon, the trial court sentenced Defendant to six months to serve with the remainder of the sentence suspended

to supervised probation.  For his conviction for evading arrest in a motor vehicle, the trial court suspended his sentence and placed him on supervised probation.  The trial court granted Defendant a thirty-day stay to arrange for care for his grandson before Defendant surrendered to serve his sentence.

Defendant now timely appeals.

## Analysis

On appeal, Defendant argues that the trial court abused its discretion in sentencing Defendant to the maximum sentence on each count.  He asserts that the trial court "did not address the purposes of the overarching purpose laid out at the beginning of § 40-35-102: Every defendant shall be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense."  Defendant contends that the trial court improperly relied on facts surrounding charges that had been dismissed when it applied the seriousness of the offense factor and imposed split confinement.

The State responds that the trial court relied upon the facts as stated in the guilty plea submission hearing and not on the facts regarding the dismissed charges.  It argues that the trial court properly imposed a sentence of split confinement and did not abuse its discretion in imposing four-year sentences.  We agree with the State.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness.  *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012).  A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'"  *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

In determining the proper sentence, the trial court must consider:  (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and  needs assessment conducted by the department and contained in the presentence report.  *See* Tenn. Code Ann. § 40-35-210(b) (2021); *State v.*

*Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103(5) (2021).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2021); *Bise*, 380 S.W.3d at 706. However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2021), Sentencing Comm'n Cmts.

Because the trial court imposed within-range sentences and placed its reasoning on the record, we will review its decisions under an abuse of discretion standard with a presumption of reasonableness. *Bise*, 380 S.W.3d at 707.

*Range*

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2021).

Although the trial court should also consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (2021); *see also Bise*, 380 S.W.3d at 698 n. 33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. "[Appellate courts are] bound by a trial court's decision as to the length of the

- 6 -

sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Id.* at 346.

Here, the trial court applied enhancement factor (1), that Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; and enhancement factor (8), that Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(1), (8) (2021). Certainly, with five prior felony convictions, Defendant had more than enough convictions to establish him as a Range II multiple offender. *See* Tenn. Code Ann. § 40-35-106(a) (2021). Further, the trial court noted, and Defendant admitted at the sentencing hearing, that Defendant previously had his probation revoked on four different prior felony convictions. *State v. James M. Coggins, Jr.*, No. 01C01-9310-CR-00360, 1994 WL 390445, at *7 (Tenn. Crim. App. July 28, 1994) (stating that enhancement factor (8) applies "to previous history of unwillingness to comply with the conditions of a sentence involving release in the community"). With two enhancement factors and no mitigating factors, we conclude that the trial court did not abuse its discretion when it imposed a within-range sentence of four years on each count.

### *Manner of service*

The abuse of discretion with a presumption of reasonableness standard of review set by our supreme court in *Bise* also applies to a trial court's decision to grant or deny probation. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012) (citing *Bise*, 380 S.W. 3d at 708). Under the revised Tennessee sentencing statutes, a defendant is no longer presumed to be a favorable candidate for alternative sentencing. *Carter*, 254 S.W.3d at 347 (citing Tenn. Code Ann. § 40-35-102(6)). Instead, the "advisory" sentencing guidelines provide that a defendant "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" Tenn. Code Ann. § 40-35-102(6)(A) (2021).

Under Tennessee Code Annotated section 40-35-103, the trial court should look to the following considerations to determine whether a sentence of confinement is appropriate:

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1) (2021).  When a trial court relies on more than one consideration in section 40-35-103(1) to impose a sentence of confinement, we review the decision under an abuse of discretion standard.  *State v. Robert Allen Lester, Jr.*, No. M2014-00225-CCA-R3-CD, 2014 WL 5501236, at *5 (Tenn. Crim. App. Oct. 31, 2014) (citing *State v. Sihapanya,* 516 S.W.3d 473, 476 (Tenn. 2014)).

Here, the trial court found that all three considerations in section 40-35-103(1) applied, sentenced Defendant to six months' incarceration, and suspended the remainder of his sentences to supervised probation.  The trial court found that Defendant had a long history of criminal conduct, including five prior felony convictions, and the record supports this conclusion.  Tenn. Code Ann. § 40-35-103(1)(a) (2021).  The trial court also found that, in at least four of those prior felony convictions, measures less restrictive that confinement were applied unsuccessfully to Defendant, and the record supports this conclusion as well.  Tenn. Code Ann. § 40-35-103(1)(c) (2021).  While it is arguable that imposing a sentence of confinement based on the seriousness of the offense under section 40-35-103(1)(B) may not be appropriate under *State v. Trotter*, 201 S.W.3d 651, 654 (Tenn. 2006) (such a denial of alternative sentencing warranted only when offense is "especially violent, horrifying, shocking, reprehensible, offensive or otherwise of an excessive or exaggerated degree"), it is clear that an imposition of confinement pursuant to sections (A) and (C) are "amply justified."  *See State v. Teddy Cardwell*, No. 03C01-9804-CC-00137, 1999 WL 356068, at *3 (Tenn. Crim. App. May 11, 1999).  Therefore, we conclude that the trial court did not abuse its discretion when it imposed split confinement.  Defendant is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE